DAVID DOE *v.* NORWICH ROMAN CATHOLIC
DIOCESAN CORPORATION ET AL.
(SC 17518)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 6—officially released July 25, 2006

*Karen K. Clark,* with whom were *Richard J. Kenny* and, on the brief, *Frank G. Usseglio,* for the appellant (plaintiff).

*Michael E. Driscoll,* with whom, on the brief, was *Jeffrey F. Buebendorf,* for the appellee (named defendant).

*Opinion*

VERTEFEUILLE, J. In this appeal, we are asked to decide when the thirty year statute of limitations period under General Statutes § 52-577d,[1] triggered by a minor victim of sexual assault attaining the age of majority, begins to run for the plaintiff, David Doe, who was nineteen years old when the legislature lowered the age of majority from twenty-one years to eighteen years in 1972. See Public Acts 1972, No. 127, § 1. The plaintiff appeals from the summary judgment rendered by the trial court in favor of the named defendant, the Norwich Roman Catholic Diocesan Corporation (defendant).[2] The plaintiff contends that the trial court improperly rendered summary judgment based on its conclusion that the plaintiff had failed timely to commence the present action under § 52-577d. We agree, and, accordingly, we reverse the judgment of the trial court.

The record reveals the following factual and procedural history. The plaintiff was born on July 16, 1953. The plaintiff alleges that, during 1962 and 1963, he was sexually assaulted on numerous occasions by Bernard Bissonnette, a priest who was an agent, servant, or employee of the defendant. In September, 2002, the plaintiff brought the present action to recover for the physical and emotional injuries he allegedly had suffered as a result of Bissonnette's sexual assaults.[3] The defendant thereafter made a motion for summary judgment on the basis that the present action had been

---

[1] General Statutes § 52-577d provides: "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than thirty years from the date such person attains the age of majority."

[2] Saint Mary's Roman Catholic Church also was named as a defendant, but the plaintiff subsequently withdrew his action against the church.

[3] The plaintiff's second amended complaint alleged the following causes of action: negligence; recklessness; negligent infliction of emotional distress; and intentional infliction of emotional distress.

commenced untimely under § 52-577d. The trial court granted the defendant's motion for summary judgment, concluding that § 52-577d required that the plaintiff initiate his action before reaching forty-eight years of age. The trial court further concluded that nothing in the language of § 52-577d or General Statutes § 1-1d,[4] which generally defines the age of majority as eighteen years, indicates that the thirty year statute of limitations period should be calculated differently for an individual who was at least eighteen years old when the legislature lowered the age of majority to eighteen years in 1972. The trial court therefore concluded that the defendant was entitled to judgment as a matter of law under § 52-577d because the plaintiff had initiated the present action when he was forty-nine years old. This appeal followed.[5]

On appeal, the plaintiff claims that the trial court improperly determined that the present action was initiated untimely under § 52-577d. In particular, the plaintiff argues that the plain and unambiguous meaning of § 52-577d requires that a minor victim of sexual assault must initiate a civil action no later than thirty years from the date that the victim attained the age of majority. The plaintiff further contends that he did not attain the age of majority until October 1, 1972, the date on which § 1-1d became effective and lowered the age of majority to eighteen years. The plaintiff reasons that prior to the October, 1972 effective date of § 1-1d, when the age of

[4] General Statutes § 1-1d provides: "Except as otherwise provided by statute, on and after October 1, 1972, the terms 'minor', 'infant' and 'infancy' shall be deemed to refer to a person under the age of eighteen years and any person eighteen years of age or over shall be an adult for all purposes whatsoever and have the same legal capacity, rights, powers, privileges, duties, liabilities and responsibilities as persons heretofore had at twenty-one years of age, and 'age of majority' shall be deemed to be eighteen years."

[5] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

majority under the common law was twenty-one years, he was only nineteen years of age. Thus, he argues that, with regard to his claim against the defendant, the thirty year statute of limitations period under § 52-577d did not begin to run until October 1, 1972. We agree.[6]

At the outset, we set forth the applicable standard of review. "[T]he standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks

---

[6] The plaintiff makes three additional arguments. First, he argues that construing § 52-577d to require him to have initiated the present action prior to reaching forty-eight years of age would frustrate the legislature's purpose in enacting § 52-577d: to provide minor victims of sexual abuse an expansive opportunity to bring civil actions against their abusers and those who permitted the abuse to occur. Second, he claims that courts of other jurisdictions have construed their statutes of limitations that are based on the plaintiff reaching the age of majority as running from the effective date of the change in the age of majority. Third, the plaintiff argues that the retroactive application of the change in majority age could lead to absurd results. To illustrate this point, the plaintiff argues that a fifteen year old child sexually abused today would have until his forty-eighth birthday to initiate a civil action. The plaintiff claims that, if the legislature changes the age of majority to fourteen years three years after the abuse occurred, under the trial court's interpretation of § 52-577d, the victim would no longer be considered a minor and any civil action would be time barred because he would not be able to take advantage of the thirty year statute of limitations under § 52-577d and the general three year statute of limitations for civil actions based on torts would have run under General Statutes § 52-577. The plaintiff argues that it could not have been the intention of the legislature to leave victims open to the possible retroactive application of the age of majority in a manner that would unexpectedly bar the initiation of civil actions. Because we conclude that the plaintiff timely initiated the present action under the plain and unambiguous meaning of the text of §§ 52-577d and 1-1d, we need not address these additional arguments.

omitted.) *Morris* v. *Congdon,* 277 Conn. 565, 568–69, 893 A.2d 413 (2006).

"The issue before this court involves a question of statutory interpretation that also requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citations omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.,* 276 Conn. 1, 7, 882 A.2d 597 (2005). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci,* 271 Conn. 284, 287 n.3, 856 A.2d 408 (2004).

We therefore begin our analysis by examining the language of the statutes at issue. Section 52-577d provides in relevant part that "no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or

sexual assault may be brought by such person later than thirty years from the date such person attains the age of majority." The use of the words "from the date such person attains the age of majority" in § 52-577d clearly requires a determination of when a particular plaintiff reached the age of majority.[7] Thus, to determine whether the present action was initiated timely under § 52-577d, we next must examine when the plaintiff attained the age of majority under § 1-1d.

Section 1-1d provides in relevant part that "*on and after October 1, 1972*, the terms 'minor', 'infant' and 'infancy' shall be deemed to refer to a person under the age of eighteen years and any person eighteen years of age or over shall be an adult *for all purposes* whatsoever and have the same legal capacity, rights, powers, privileges, duties, liabilities and responsibilities as persons heretofore had at twenty-one years of age, and '*age of majority' shall be deemed to be eighteen years.*" (Emphasis added.) At the same time the legislature enacted § 1-1d, it also enacted General Statutes § 1-1e, which provides in relevant part that "[n]othing in [section] 1-1d . . . shall impair or affect any act done, offense committed or right accruing, accrued or acquired, or an obligation, liability, penalty, forfeiture or punishment incurred prior to October 1, 1972, and the same may be enjoyed, asserted and enforced, as fully and to the same extent and in the same manner as they might under the laws existing prior to said date . . . ." Thus, pursuant to § 1-1e, the establishment of the age of majority at eighteen years in § 1-1d must be read to have prospective effect only. Accordingly, on the basis of our review of the text of § 1-1d, as read in light of § 1-1e, we conclude that its meaning is plain and unambiguous because the only reasonable interpre-

[7] Indeed, both parties, in their briefs in this court, acknowledge that § 52-577d must be read to calculate the limitation period from the date on which each individual victim attained the age of majority.

tation of its text is that on and after October 1, 1972, the age of majority in Connecticut became eighteen years and that this change in the age of majority has no effect prior to October 1, 1972.[8]

In the present case, the plaintiff was nineteen years old as of September 30, 1972, and was a minor as of that date because, prior to the enactment of § 1-1d, the common law defined the age of majority as twenty-one years. See *State* v. *Taylor*, 153 Conn. 72, 82, 214 A.2d 362 (1965) ("[o]ur common law . . . considers a minor to be any person under the age of twenty-one"), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); see also 42 Am. Jur. 2d, Infants § 5 (2000) ("[u]nder the common law, infants . . . attain their majority at the age of [twenty-one] years"). Accordingly, it was not until October 1, 1972, that the plaintiff attained the age of majority because this was the first date on which the age of majority was deemed to be eighteen years under the specific terms of § 1-1d, which became effective only "*on and after* October 1, 1972 . . . ." (Emphasis added.) We therefore conclude that the meaning of § 52-577d, when read in light of § 1-1d, is plain and unambiguous because it is susceptible of only one reasonable interpretation, namely, that a minor victim of sexual assault may bring a civil action no later than thirty years from the date that he or she attains the age of majority as that age is defined by § 1-1d.

[8] Although this court has not examined previously whether § 1-1d applies retroactively, it has either noted in dictum or assumed that the statute did not reach back to qualify someone as an adult upon his or her eighteenth birthday. See *Slicer* v. *Quigley*, 180 Conn. 252, 254, 429 A.2d 855 (1980) (observing that defendants, who were nineteen and twenty years old on July 18, 1972, date of negligently caused motor vehicle accident, were minors at that time), overruled on other grounds by *Ely* v. *Murphy*, 207 Conn. 88, 540 A.2d 54 (1988); *Sillman* v. *Sillman*, 168 Conn. 144, 151, 358 A.2d 150 (1975) (noting approvingly rationale of Kansas Supreme Court, in its analysis of Kansas statute reducing age of majority to eighteen years, that statute "did not reach back to make a person an adult from and after his eighteenth birthday but only operated from and after the effective date").

Thus, the plaintiff had thirty years from October 1, 1972, to bring the present action, which was timely brought in September, 2002.

Despite our conclusion that, in the context of the present case, the text of §§ 52-577d and 1-1d is susceptible of only one reasonable interpretation, we must determine whether extratextual evidence of the meaning of these statutes must be considered because our interpretation yields absurd or unworkable results. See General Statutes § 1-2z. At the outset, we acknowledge that our interpretation of the interplay between §§ 52-577d and 1-1d creates an inconsistency in the age by which an individual may bring an action under § 52-577d. Although nearly all victims of childhood sexual abuse will be able to bring a civil action until they are forty-eight years old, a small, finite group,[9] including the plaintiff, were able to bring an action until they were between forty-eight and fifty-one years old, depending on their age on October 1, 1972. Nevertheless, this facial inconsistency in age does not render our interpretation of the statutes either absurd or unworkable. Rather, this inconsistency may result from a rational public policy goal: to provide alleged victims of childhood sexual assaults extra time to bring a civil action as measured from the date on which the law vests that alleged victim with the rights and privileges of an adult, including the right to bring a civil action in one's own name. See *Newman* v. *Newman*, 235 Conn. 82, 95, 663 A.2d 980 (1995) (generally, minors may bring civil action only by guardian or next friend). Whether this is a proper policy or result is not an issue for this court to resolve. We "must construe a statute as written

[9] This group of potential plaintiffs is limited to alleged victims of childhood sexual abuse, sexual exploitation, or sexual assault who were between the ages of eighteen and twenty-one years on October 1, 1972. Potential plaintiffs within this group had to have brought such a civil action by October 1, 2002, otherwise it would be time barred under § 52-577d.

. . . [and we] cannot rewrite a statute to accomplish a particular result." (Citations omitted; internal quotation marks omitted.) *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 441–42, 623 A.2d 1007 (1993). If the legislature desires a different result, it is a legislative function to rewrite the statute to achieve that result.

The defendant contends that the trial court properly concluded that the present action was time barred because the plain and unambiguous meaning of § 52-577d requires that the statute of limitations period be measured from the date the plaintiff attained the age of eighteen. Specifically, the defendant claims that the statute of limitations period must be measured from the plaintiff's eighteenth birthday because, when § 52-577d was enacted, § 1-1d defined the age of majority as eighteen years. Therefore, the defendant argues that, despite the fact that the plaintiff was unquestionably a minor on July 16, 1971, the date of his eighteenth birthday, under the common law at that time, the effect of §§ 52-577d and 1-1d was to reach back and make the plaintiff an adult as of that date. We disagree.

"It is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Citations omitted; internal quotation marks omitted.) Id., 441–42. Moreover, "[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind

every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 415, 880 A.2d 882 (2005).

In essence, the defendant urges us to interpret § 52-577d to provide that no action could be brought "later than thirty years from the age of majority." The fatal flaw in such a reading of § 52-577d is that the statute provides that no action may be brought "later than thirty years from *the date such person attains* the age of majority." (Emphasis added.) The defendant's interpretation reads the words "the date such person attains" out of the statute. Under our rules of statutory construction, we are not permitted to ignore the legislature's use of this phrase. Rather, the legislature's use of this phrase requires us to interpret § 52-577d as measuring the limitations period from the date that the plaintiff personally attained the age of majority.

The defendant also makes the somewhat related argument that the plaintiff under § 1-1d did, in fact, attain the age of majority on his eighteenth birthday.[10] Specifically,

---

[10] The defendant also contends that its interpretation of § 52-577d, as requiring that the plaintiff initiate the present action prior to his forty-eighth birthday, is supported by dicta in this court's decision in *Roberts* v. *Caton*, 224 Conn. 483, 619 A.2d 844 (1993), and the Appellate Court's decision in *Giordano* v. *Giordano*, 39 Conn. App. 183, 664 A.2d 1136 (1995). We disagree. In both cases, the courts commented that the 1991 amendment to § 52-577d, which extended the statute of limitations period from two years to seventeen years; Public Acts 1991, No. 91-240; effectively provided alleged victims the ability to initiate civil actions until the age of thirty-five. *Roberts* v. *Caton*, supra, 493 n.8; *Giordano* v. *Giordano*, supra, 191. Although this dictum correctly described the *general* rule based on the assumption that the alleged victim attained the age of majority on his or her eighteenth birthday, neither this court nor the Appellate Court discussed the special circumstances before us in the present case, in which the alleged victim did not attain the age of majority on the date of his eighteenth birthday. Thus, these statements have no bearing on our determination of the proper date from which the statute of limitations begins to run for the plaintiff, who did not attain the age of majority until he was nineteen years old when § 1-1d became effective.

The defendant additionally contends that the legislative history of § 52-577d supports an interpretation of the statute as requiring that a civil action

the defendant claims that the phrase "on and after October 1, 1972" in § 1-1d cannot be used to create an exception to the definition of the age of majority. The defendant contends that this phrase merely establishes the statute's effective date and using it to create an exception to the age of majority definition improperly imports additional meaning to this phrase. The defendant claims that nowhere in the language of § 1-1d does it indicate that this definition was inapplicable to individuals who were between the ages of eighteen and twenty-one years of age on October 1, 1972. We disagree.

The core of the defendant's argument is that, although the plaintiff was a minor on his eighteenth birthday under the law in effect at that time, the subsequent passage of § 1-1d retroactively made his eighteenth birthday the date he attained the age of majority. We reject this interpretation of the effect of § 1-1d because it runs afoul of another principle of statutory construction: absent a clear and unequivocal expression of the legislature's intent that the statute apply retrospectively, statutes affecting substantive rights apply prospectively only. See *State* v. *Skakel*, 276 Conn. 633, 680, 888 A.2d 985 (2006). By contrast, we "have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Citations omitted; internal quota-

be brought by the alleged victim's forty-eighth birthday. Because we conclude that the meaning of §§ 52-577d and 1-1d, as solely provided by the text of the statutes, is plain and unambiguous, we are precluded from consulting extratextual evidence of the meaning of the statutes. See General Statutes § 1-2z.

tion marks omitted.) Id., 680–81. It is beyond dispute that § 1-1d is substantive in nature because it generally gives persons, between eighteen and twenty-one years of age at the time the statute went into effect, the same legal capacity, rights, powers, privileges, duties, liabilities, and responsibilities that were previously reserved for individuals twenty-one years of age and older. See *Sillman* v. *Sillman*, 168 Conn. 144, 147, 358 A.2d 150 (1975) (noting that under Public Acts 1972, No. 127, of which § 1-1d was part, eighteen year olds could now "vote, borrow money, sell or buy liquor, and engage in licensed occupations," and that upon reaching this age "guardianship is terminated . . . and parents no longer have a legal duty to support the child" [citation omitted]); see also *Yale Diagnostic Radiology* v. *Estate of Fountain*, 267 Conn. 351, 355–56, 838 A.2d 179 (2004) (noting minor's limited capacity to enter into contracts); *Newman* v. *Newman*, supra, 235 Conn. 95 (noting minor's general incapacity to bring civil action in own name).

Further, the legislature did not express a clear and unequivocal intent that this change in the status of persons between eighteen and twenty-one years of age should apply retroactively. To the contrary, as we have discussed previously herein, the legislature expressed the opposite intent. First, the text of § 1-1d plainly provides that the age of majority will only be deemed to be eighteen years *on and after* October 1, 1972. Second, § 1-1e provides that § 1-1d should not be read to impair or affect any act done or right accrued *prior* to October 1, 1972, thus making clear that the legislature intended § 1-1d to have prospective effect only.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.